UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
CASE NO. 21-CR-428 (ER)

UNITED STATES OF AMERICA,

v.

ROBERT JEFFREY JOHNSON, et al.
_____/

### JOINT MOTION TO SEVER DEFENDANTS
### AND INCORPORATED MEMORANDM OF LAW

The defendants, ROBERT JEFFREY JOHNSON and KATHLEEN HOOK, pursuant to Federal Rule of Criminal Procedure 14, move to sever each's trial from the other to ensure access to the other's exculpatory testimony. This motion may be deemed somewhat premature according to the standards that govern severance. Still, it provides advanced notice of the potential dilemma that may result from a joint trial and provides the Court the maximum flexibility to avert a denial of the defendants' constitutional rights to due process and to present a defense. In support, they incorporate a memorandum and request oral argument.

Respectfully submitted,

| | |
|---|---|
| **BLACK SREBNICK** | **BLACK SREBNICK** |
| Howard Srebnick, Esq. | Alyssa Silvaggi, Esq. |
| E-mail: HSrebnick@RoyBlack.com | ASilvaggi@RoyBlack.com |
| *Counsel for Robert Johnson* | *Counsel for Kathleen Hook* |

1

## **MEMORANDUM OF LAW**

Defendants Johnson and Hook move for a severance because both seek vital, exculpatory testimony from each other to support their defenses; presently, neither can know, nor commit with sufficient certainty, that he or she would testify at a joint trial.

Hook may be unable to secure the testimony of her son-in-law Johnson at a joint trial, because Johnson has not decided whether he will take the stand in his own defense. He most assuredly would not testify, if taking the witness stand would open the door to the admission of his prior federal fraud conviction. *See* Fed. R. Evid. 609(a). For its part, the government has indicated an intent to introduce the prior conviction *in its case-in-chief*, even if Johnson does not testify; but the government has not yet filed a motion to do so. *See* Fed. R. Evid. 404(3).

At a separate trial—before a jury adjudicating Hook's guilt or innocence but not Johnson's—Johnson would unconditionally testify for Hook (his mother-in-law and grandmother to his children); his testimony would be exculpatory and support her defense that (1) Riccardo Olivieri, "Associate -1," (who died in April 2016 and is unavailable to testify), and Andre Cardoso, "Associate-2," a French national and resident (whose testimony neither defendant cannot procure because he is outside the subpoena power of this court), were the decision-makers regarding how PCI and NCB Wholesale Co. invested the money that "lessors" under the Silver Lease

Program Agreement loaned PCI and to whom she wrote checks and wire-transferred funds, *see* DE#2:5, ¶ 5, and (2) Johnson and Hook understand that the PCI Silver Lease Program Agreement, by its terms, allowed PCI to use the silver and/or money loaned to PCI by the lessors "to fund unrelated business ventures," DE#2:14 ¶ 24, including "a high end sandal company [Samba Sol and its various iterations], . . . as well as a mobile phone application [Kalipark]," DE#2:14, ¶ 25, and "pay for the personal expenses of, among others, Johnson, Hook and Johnson's wife [Carrie Johnson]." DE#2:14, ¶ 24. *See* DE#66 (Motion to Dismiss Counts One and Three).

On the flip-side, Johnson needs Hook's testimony to the same effect, that (1) contrary to the indictment's allegation that Johnson "orchestrated the Silver Lease Program scheme to defraud … including by installing associates and family members as officers of PCI and the entity NCB Wholesale Co . ("NCB Wholesale"), and by providing direction to these family members and associates, as well as other participants," DE#2:3, ¶ 7, defendant Hook handled the financial affairs of those entities (including writing checks and initiating wire transfers to third-parties) at the direction of, and/or authorized by, Riccardo Olivieri, "Associate-1," and/or Andre Cardoso, "Associate-2," *see* DE#2:5, ¶ 5, and (2) Hook and Johnson understand that the PCI Silver Lease Program Agreement, by its very terms, allowed PCI to use the silver and/or money that the lessors/lenders provided "to fund unrelated business ventures," DE#2:14 ¶ 24.

If Johnson decides not to provide this testimony himself (*e.g.*, to avoid admission of or cross-examination about his prior conviction), he cannot effectively present a defense without the testimony of Hook. But Hook may well decline to testify at trial—invoking her due process rights, her presumption of innocence and the government's heavy burden of proof—and rely, instead, on her counsel's advocacy to demonstrate reasonable doubt. She is likely to make this "game-time" decision whether to testify, after the government rests its case, based on the strength/weakness of the government's evidence, including the (currently unknown) testimony of cooperating co-defendant Baldwin, the government's apparent star witness, who in the past has given sworn testimony that fails to implicate Hook.

A severance is the only way for Johnson to guarantee that Hook's testimony is available in his defense case; at Johnson's separate trial, one in which Hook testifies in Johnson's defense—which Hook is willing to do for Johnson (her son-in-law and the father of her grandchildren)—Johnson is able to vindicate his Fifth and Sixth Amendment rights to due process and compulsory process while not trespassing on Hook's Fifth Amendment right to remain silent at her own (separate) trial.

To accommodate their respective, albeit conflicting, constitutional rights, this Court could sever Hook for trial—even as late as when Hook and Johnson announce their final decision whether they will/not testify at the currently-scheduled joint trial.

By presenting this motion now, defendants are providing the government and Court with advanced notice of the likely need for a severance so that the Court can timely consider the issue and exercise its (unreviewable) discretion to grant a severance, even if the Court were to conclude that the motion currently does not meet the Second Circuit's test, discussed below, for requiring a severance at this time.

Thus, the Court could (1) sever the defendants now to guarantee that each would be available at the other's separate trial; (2) proceed with a joint trial, and if either declines to testify (e.g., Johnson) for the other (e.g., Hook), it could sever the moving-defendant (Hook) so that the other defendant's ongoing trial (Johnson's) can conclude and thereafter render that defendant (Johnson) available to testify at a later, separate trial for the moving defendant (e.g., Hook); or (3) empanel two juries, conduct a joint trial of the government's case in chief before the two juries, and then allow the moving-defendant (e.g., Hook) to present the testimony of the other defendant (e.g., Johnson) before just the moving-defendant's jury (Hook's jury), while excluding from the courtroom the witness-defendant's jury (Johnson's jury). Under this scenario, the closing arguments would be delivered to the juries separately (so the government would give separate closing arguments to each jury). If neither defendant testifies or both testify, rendering the issue moot, one of the two juries could be excused and the trial proceed as any other.

## ARGUMENT

A defendant in a criminal case has a fundamental, constitutional right to present a defense and, specifically, to call witnesses to present exculpatory testimony on his or her behalf. Trial courts must scrupulously protect this right. Failure to do so renders the trial fundamentally unfair and violative of due process. *See, e.g., Abbott v. Wainwright*, 616 F.2d 889 (5th Cir. 1980); *Tifford v. Wainwritght*, 588 F.2d 954, 957 (5th Cir. 1979); *Byrd v. Wainwright*, 428 F.2d 1017, 1018 (5th Cir. 1970).

Whether to grant severance is a matter within this court's discretion. *See, e.g., United States v. Bari*, 750 F.2d 1169, 1177 (2d Cir. 1984). The test for severance in this Circuit based on one defendant's need for the testimony of a co-defendant is well settled. A court should consider "(1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege; (2) the degree to which the exculpatory testimony would be cumulative; (3) the counter arguments of judicial economy; and (4) the likelihood that the testimony would be subject to substantial, damaging impeachment." *United States v. Wilson*, 11 F.3d 346, 354 (2d Cir. 1993) (quoting *United States v. Finkelstein*, 526 F.2d 517, 523-24 (2d Cir. 1976)).

As to factor (1) ("the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege"), each defendant,

6

through undersigned counsels, has proffered that he/she would testify at the other's *separate* trial. This is far "more than a gleam of possibility in the [other] defendant's eye." *Tifford*, 588 F.2d at 957. Neither Johnson nor Hook should be "foreclosed of the possibility that [the other] would testify in his [or her] behalf merely because that eventuality [is] not a certainty." *United States v. Echeles*, 352 F.2d 892, 898 (7th Cir. 1965). They are family, so they are most likely to follow through on their commitment to testify at a severed trial.

Moreover, as demonstrated above, the instant case does not present the typical situation where the exculpatory testimony of each defendant would be self-incriminating. Indeed, the considerations that weigh against each defendant testifying in his or her own trial have little to do with fear of self-incrimination with regard to the fraud allegations against each defendant. *Both* defendants would give testimony in the other's separate trial that would be exculpatory to both. To the extent this factor can be assessed at the current time, it weighs in favor of severance.

As to factor (2) ("the degree to which the exculpatory testimony would be cumulative'), as demonstrated above, the exculpatory testimony that each defendant seeks of the other is not cumulative. Indeed, the very reason it is needed is because the defendant seeking the testimony may well, for other strategic reasons, not testify. Even if, for instance, Johnson were to testify that he did not direct the operations of PCI and NCB Wholesale as alleged in the indictment, Hook's exculpatory testimony

that Olivieri and Cardoso directed her check writing, wire transfers and the investment of the funds that lessors loaned to NCB Wholesale, would be corroborating of Johnson, not unnecessarily cumulative. And the exculpatory testimony each defendant claims to need is based on the above, very specific proffer, not merely some "wholly conclusory statements" or a proffer "so general that [this Court is] unable to determine the prejudice [each defendant will suffer without it]." *United States v. Bari*, 750 F.2d 1169, 1177 (2d Cir. 1984).

As to factor (3) ("the counter arguments of judicial economy"), defendants recognize that courts presume that persons indicted together should be tried together. *United States v. O'Connor*, 650 F.3d 839, 858 (2d Cir. 2011). "Joint trials play a vital role in the criminal justice system, as [t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts, and they avoid "requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying." *Id.* (citations and internal quotations omitted). But, weighed against this must be a defendant's constitutional rights to due process and to present a defense. Thus, "a single joint trial, however desirable from the point of view of efficient and expeditious criminal adjudication, may not be had at the expense of a defendant's right to a fundamentally fair trial." *Echelels*, 352 F.2d at 898. To the extent the court has the concern of witness inconvenience, empaneling

two juries as proposed above would avoid this while preserving the defendants' constitutional rights.

Lastly, as to factor (4) ("the likelihood that the testimony would be subject to substantial, damaging impeachment"), it is not at all clear what impeachment, if any, the government would posit against Hook's testimony. She maintains that she did as she was directed by the decision-makers, and that this was consistent with her understanding of the PCI agreements with its lessors/lenders. Aside from the self-interest that any testifying defendant arguably has, "substantial, damaging impeachment" of Hook is not apparent.

Likewise, even though a jury might learn that Johnson was previously convicted of fraud, the jury would be specifically instructed that it could not consider this as evidence of his propensity to commit fraud or of bad character. It is likewise unclear what, if any, "substantial, damaging impeachment" the government would have to offer.

Regardless, their testimony may be critically important to each other insofar as their testimony would rebut the trial testimony of cooperating codefendant Baldwin, especially to the extent that his newly-minted testimony expands upon his prior sworn testimony or contradicts prior testimony that favored the defendants.

To the extent that the Court concludes that the defendants are presently unable to make a substantial showing on each of the *Finkelstein* factors, they ask the Court

to defer ruling or, alternatively, deny the motion without prejudice. Through this motion, filed two months prior to the currently-scheduled trial date, defendants have endeavored to provide advanced notice of the potential constitutional dilemma that lies ahead at the joint trial. As the government's evidence becomes clearer, as well as the defendants' strategic considerations regarding their respective defenses, they will supplement this motion and the evidence bearing on the *Finkelstein* factors.

Undersigned counsel conferred with government counsel who advised that the government opposes this motion.

Respectfully submitted,

| | |
|---|---|
| **BLACK SREBNICK** | **BLACK SREBNICK** |
| 201 South Biscayne Boulevard | 201 South Biscayne Boulevard |
| Miami, Florida 33131 | Miami, Florida 33131 |
| Tel. (305) 371-6421 | Tel. (305) 371-6421 |
| | |
| /s/  *Howard Srebnick* | */s/ Alyssa Silvaggi* |
| Howard Srebnick, Esq. | Alyssa Silvaggi, Esq. |
| E-mail: HSrebnick@RoyBlack.com | ASilvaggi@RoyBlack.com |
| *Counsel for Robert Jeffrey Johnson* | *Counsel for Kathleen Hook* |